UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

ROSALINDA B.[1], )
 )
   Plaintiff, )
 )
v. ) CIVIL NO. 2:20cv341
 )
KILOLO KIJAKAZI, Acting )
Commissioner of Social Security, )
 )
   Defendant. )

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and for Supplemental Security Insurance (SSI) under Title XVI of the Act. 42 U.S.C. § § 423(d), 1382(c)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months.

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

. . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since October 6, 2013, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: osteoarthritis with associated arthroscopy of the right knee in 2014 and August 2019; degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine with perineural cysts; arthritis of the left hip; carpometacarpal ("CMC") arthritis; carpal tunnel syndrome; bunions and hammertoe; asthma; depression and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can sit, stand, and walk for 6 hours in an 8-hour workday. She can push and pull as much as she can lift and carry. She can frequent [sic] operate hand controls bilaterally. She can frequently handle, finger, and feel bilaterally. She can occasionally use foot controls bilaterally. She can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She can never work at unprotected heights or around moving mechanical parts. She can have occasional exposure to vibration and frequent operation of a motor vehicle. She cannot be exposed to extremes of cold. She is limited to semi-skilled work.

6. The claimant is capable of performing past relevant work as a housecleaner and sales clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 6, 2013, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 1127-1137).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on October 5, 2021. On November 17, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on

December 7, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 4 was the determinative inquiry.

Plaintiff filed applications for DIB and SSI, alleging disability beginning October 6, 2013. (Tr. 10). Plaintiff's claims were denied initially, on reconsideration, and following a hearing by ALJ Kathleen Kadlec. (Tr. 7-28). The Appeals Council denied review, and Plaintiff filed a civil action with this Court (Case No. 2:18cv230-JEM). (Tr. 1209-24). On August 22, 2019, the Court reversed and remanded the case, and on November 2, 2019, the Appeals Council entered an order remanding the case for further administrative proceedings. (Tr. 1225-31, 1233-36). ALJ Kadlec again denied Plaintiff's claims in a decision dated May 22, 2020. (Tr, 1121-45). Plaintiff has exhausted her administrative remedies, so this matter is appropriately before the Court for review

under 42 U.S.C. §§ 405 (g) and 1383(c)(3).

During an office visit in January 2013, Plaintiff complained of back pain, hip pain, arthralgias, and burning sensation in the lower extremities. (Tr. 393). Dr. M. Libiran, M.D. diagnosed sciatica and hip arthritis and ordered x-rays of lumbar spine and left hip. (Tr. 394). A lumbar x-ray from January 2013 revealed grade 1 spondylolisthesis of L4 relation to L5, partial sacralization left L5 vertebra and facet arthritic changes of the lumbosacral spine. (Tr. 595).

In March 2013, Plaintiff complained of pain and claudication in both feet. (Tr. 423). Dr. Libiran diagnosed numbness and tingling of foot and sciatica and recommended a home exercise program. (Tr. 423).

A cervical MRI from August 2013 revealed bilateral perineural cysts at C7-T1 level and disc bulges at C5-C6 and C6-C7 levels. (Tr. 635). A bilateral upper extremity EMG with nerve conduction studies from October 2013 showed chronic bilateral carpal tunnel syndrome. (Tr. 641).

In November 2013, Plaintiff presented to St. Catherine Hospital with pain and swelling at the base of both thumbs and numbness and tingling in the median nerve distribution of both hands. (Tr. 376). She described having trouble with her daily activities. (Tr. 376). Examination revealed pain and swelling in the base of both thumbs. (Tr. 376). Diagnostic studies revealed severe pantrapezial arthritis in both thumbs. (Tr. 376). Dr. R. Richter, M.D., a hand surgeon, diagnosed bilateral thumb arthritis and bilateral carpal tunnel syndrome, both worse on the right side and recommended surgery. (Tr. 377). Plaintiff underwent right endoscopic carpal tunnel release and excision of right trapezius tendon sling arthroplasty basilar thumb joint. (Tr. 378). She was also administered a steroid injection for the left carpal tunnel syndrome. (Tr. 378). Between December 2013 and March 2014, Plaintiff underwent occupational therapy for her hands. (Tr. 654-68, 677-711). In April 2014, Plaintiff continued to complain of pain in the PIP joint of the left hand and

pain and swelling in her right thumb. (Tr. 382). Dr. Richter prescribed Medrol Dosepak and Norco. (Tr. 382). In July 2015, Plaintiff complained of bilateral arm numbness. (Tr. 1666). She underwent an EMG study in August 2015 which revealed carpal tunnel syndrome in the right hand. (Tr. 1666-68). In October 2016, Plaintiff complained of diffuse pain, "shaking" and "flutter" in right hand and swelling in right wrist. (Tr. 983).

In a medical source statement from October 2016, Dr. Richter noted that he had been treating Plaintiff since September 2013 for basilar thumb arthritis, bilateral, and carpal tunnel syndrome, bilateral. (Tr. 983). Dr. Richter opined that Plaintiff could only occasionally use her right hand for fine and gross manipulation. (Tr. 983).

During an orthopedic evaluation in August 2014, Plaintiff complained of left knee pain and instability. (Tr. 504). She also complained of neck pain radiating down her arms. (Tr. 505). Left knee examination showed effusion, swelling and tenderness to palpation in the medial joint line. (Tr. 506). Plaintiff also had tenderness to palpation in the midline and bilateral paraspinal area of the neck. (Tr. 506). Dr. J. Murphy, M.D. diagnosed neck pain and internal derangement of the left knee, and ordered MRIs. (Tr. 506). A left knee MRI from August 2014 revealed meniscal tears and partial rupture of a Baker's cyst. (Tr. 549). In September 2014, Dr. Murphy reviewed Plaintiff's left knee MRI and discussed left knee arthroscopy. (Tr. 523). Later that month, Plaintiff underwent left knee arthroscopy. (Tr. 538). She underwent physical therapy from November 2014 to February 2015. (Tr. 764-94, 829-41).

In May 2019, Plaintiff complained of right knee pain. (Tr. 1847). She underwent a right knee MRI which revealed degenerative changes medially and complex tear in the posterior horn body of the medial meniscus. (Tr. 1847). In August 2019, Plaintiff underwent right knee arthroscopic partial medial meniscectomy. (Tr. 2011). In September 2019, Plaintiff complained of

6

right knee soreness. (Tr. 2004). D. Woods, M.D. recommended physical therapy. (Tr. 2004). In October 2019, Plaintiff complained of pain in the anterior and medial aspect of the right knee. (Tr. 2002). Dr. Woods diagnosed complex medial meniscus tear of the right knee and primary osteoarthritis of the right knee and recommended continued physical therapy focusing on range of motion and strength in the right knee. (Tr. 2002).

During a neurological consultation in January 2020, Plaintiff described experiencing lightheadedness, left-hand numbness, and left leg numbness and weakness. (Tr. 2062). A head MRI revealed acute cortical stroke. (Tr. 2067). S. Gupta, D.O. diagnosed cerebrovascular accident (CVA) due to thrombosis of precerebral artery, lightheadedness, syncope, and neck pain. (Tr. 2067). In February 2020, Plaintiff complained of left-hand numbness, left leg numbness and weakness, back pain, joint stiffness, and chronic left neck pain. (Tr. 2048, 2051). Dr. Gupta diagnosed numbness, lightheadedness, intractable cluster headache syndrome, carpal tunnel syndrome, status post carpal tunnel release, and numbness and tingling in the left arm and prescribed Tramadol. (Tr. 2056-57).

In addition to her physical conditions, Plaintiff also suffered from mental health issues. At the request of the Agency, Plaintiff underwent a psychological consultative examination in September 2014. She complained of anxiety, low mood, decreased appetite, poor sleep, variable concentration, and mood swings. (Tr. 486-87). Consulting psychologist Dr. J. Singh, Ph.D. observed that Plaintiff could not perform serial 7s and did not know the number of weeks in the year or from where the sun rose and diagnosed adjustment disorder with anxiety and depressed mood. (Tr. 486-87).

In January 2015, Plaintiff was seen at Community Healthcare for depression and anxiety. (Tr. 891). Her symptoms included poor sleep, poor appetite, low energy, varied concentration,

7

racing thoughts, mood swings and crying spells. (Tr. 891). She stated that she was on psychiatric medications in the past but discontinued them due to auditory hallucinations. (Tr. 891). Dr. M. Robbins, M.D. diagnosed major depressive disorder-recurrent and general anxiety disorder. (Tr. 893).

Between February 2015 and October 2019, Plaintiff treated with Dr. Robbins for depression, attention deficit disorder, and anxiety. (Tr. 894-96, 990-1116, 1362-1423). On the PHQ-9 Rating Scale, Plaintiff indicated that she had little interest or pleasure in doing things, feeling down, depressed, or hopeless, trouble falling or staying asleep, feeling tired, poor appetite, trouble concentrating on things such as reading the newspaper or watching television, and moving or speaking slowly. (Tr. 891, 895, 896, 998, 1007, 1015, 1024, 1051, 1062, 1072, 1080, 1092, 1101, 1112, 1113, 1362, 1363, 1365, 1366, 1368, 1369, 1372, 1373, 1375, 1376, 1378, 1379, 1382, 1383, 1386, 1387, 1390, 1391, 1393, 1394, 1397, 1398, 1400, 1401, 1403, 1404, 1406, 1407, 1409, 1410, 1412, 1413, 1415, 1416,1418, 1419, 1420, 1421).

In support of remand, Plaintiff first argues that the ALJ erred in her assessment of Plaintiff's RFC. The ALJ found that Plaintiff had the RFC to perform light work with postural and manipulative limitations. (Tr. 1129). Plaintiff contends that the ALJ failed to set forth a supported rationale for her RFC findings. State agency medical consultants J. Sands, M.D. and B. Whitley, M.D. opined, on December 24, 2014 and April 24, 2015, respectively, that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could occasionally balance, stoop, kneel, crouch, crawl, as well as climb ramps or stairs; and could never climb ladders, ropes, or scaffolds. (Tr. 77-78, 87-88, 101-03, 114-16). While devising Plaintiff's RFC, the ALJ found that the opinions of Drs. Sands and Whitley merited significant

8

weight. (Tr. 1133).

Plaintiff points out that the ALJ decided Plaintiff's applications for DIB and SSI through May 2020. (Tr. 1134-37). Thus, the State agency physicians did not review five years of medical evidence. Plaintiff argues that an ALJ may not rely on State agency consultants' opinions as substantial evidence where those consultants did not review all of the relevant evidence. The Seventh Circuit has held that an ALJ must submit any "new and potentially decisive" evidence to "medical scrutiny." *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). A medical opinion that is not predicated on the totality of evidence does not constitute substantial evidence that supports an ALJ's decision. *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010). *Accord Harlin v. Astrue*, 424 F. App'x 564, 567-68 (7th Cir. 2011) (ALJ may not predict how state agency medical consultant might interpret new evidence). Plaintiff asserts that after the State agency's reconsideration-level review, the evidence reflected that Plaintiff suffered a right knee meniscal tear (Tr. 1801) that prompted her physicians to perform a right knee arthroscopy (Tr. 1802). Also, in January 2020, evidence indicated that Plaintiff suffered a cerebrovascular accident due to thrombosis of a precerebral artery (Tr. 2067) and an MRI suggested that Plaintiff suffered an acute cortical stroke (Tr. 2057).

During the second hearing, Plaintiff testified that she suffered from constant throbbing pain in her knees. (Tr. 1152). She could stand/walk for 30 minutes at a time before needing to sit down. (Tr. 1155). Following the stroke, she suffered from numbness and weakness throughout the left side of her body. (Tr. 1162). In addition to the medical records pertaining to Plaintiff's right knee arthroscopy and CVA (that no physician reviewed), there was evidence regarding the worsening of Plaintiff's cervical spine degeneration. Specifically, a cervical CT dated January 2015 revealed cervical spondylosis and no central canal or foramina stenosis in the neck (Tr. 813), a cervical

9

spine MRI from August 2018 showed mild right neural foraminal stenosis at C3-C4 and moderate right neural foraminal stenosis at C4-C5 (Tr. 1975), and a cervical spine CT from November 2019 revealed mild right neural foraminal stenosis at C3-C4 and moderate right neural foraminal stenosis at C4-C5 (Tr. 1768). The 2018 MRI report stated that Plaintiff's degenerative disc disease of the cervical spine was unchanged from 2015 to 2018. (Tr. 1975). In 2015, doctors noted no central canal or foramina stenosis was present. (Tr. 813). However, in 2018, doctors observed mild-to-moderate foraminal stenosis. (Tr. 1975). Plaintiff claims that this suggested that her cervical disc degeneration had worsened. Plaintiff argues that the ALJ's failure to submit this evidence to medical scrutiny was not harmless because if the State agency consultants had reviewed this evidence, they may have determined that Plaintiff was more functionally limited than they found her to be in 2015. Had the State agency consultants reviewed the evidence regarding Plaintiff's cervical degenerative disc disease, right knee arthroscopy, and CVA, they may have opined that Plaintiff's ability to lift, carry, stand, and walk was further reduced, limiting Plaintiff to sedentary work, and rendering her disabled according to the medical vocational guidelines.

In response, the Commissioner argues that the ALJ's finding that Plaintiff was limited to light work was supported by the opinions of State agency physicians Drs. Sands and Whitley. The Commissioner asserts that Plaintiff is countering the State agency opinions with her lay interpretation of the subsequent (2015-2020) medical evidence. Yet the Commissioner fails to recognize that the ALJ was not qualified to interpret this subsequent evidence either. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (An ALJ may not "play doctor" or reach his own independent medical conclusion without support from the medical evidence.). Thus, due to years of subsequent medical evidence of severe impairments that was not medically reviewed, remand is appropriate on this issue.

Plaintiff also argues that the ALJ failed to account for Plaintiff's need to nap in the RFC. Plaintiff testified that, due to side effects from pain medications, she would lie down and nap every day for the majority of the day. (Tr. 1164). While the ALJ acknowledged that medications made Plaintiff feel sleepy (Tr. 1130), the ALJ never explained why she did not include a limitation that permitted Plaintiff to lie down and to nap when she suffered medication-related fatigue. Once a claimant alleges a specific work-related functional limitation, an ALJ must explain how evidence either supports or fails to support that limitation per SSR 96-8p. Also, SSR 16-3p requires an ALJ to address side effects that a claimant alleges to suffer as a result of medication. At the time that Plaintiff alleged that she needed to nap due to tiredness caused by medication, she was mostly taking Tramadol for pain. (Tr. 1164). Plaintiff asserts that sleepiness/fatigue is a common side effect of Tramadol. Plaintiff argues that because she alleged she suffered a common side effect of a medication that she was prescribed, the ALJ should have included a related functional limitation in Plaintiff's RFC. While the ALJ, at the very end of her decision, found that any drowsiness was accommodated by precluding Plaintiff from working around hazards, Plaintiff contends there was no logical/accurate bridge from the evidence to that conclusion. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (The ALJ is required to build a "logical bridge" between the evidence and her conclusions). Clearly, the ALJ did not explain how she determined that Plaintiff could work, even in a hazard-free environment, if she was so tired that she needed to lie down during the day.

In response, the Commissioner maintains that Plaintiff failed to carry her burden of producing medical evidence to establish her need to nap. However, Plaintiff testified that Tramadol made her tired requiring her to nap. (Tr. 1164). The Commissioner has failed to respond to Plaintiff's argument that SSR 16-3p requires an ALJ to address side effects that a claimant alleges to suffer because of medication. *Dogan v. Astrue*, 751 F. Supp. 2d 1029, 1042 (N.D. Ind.,

Jun. 3, 2010) (collecting 7th Circuit district court cases holding that the Commissioner's failure to address one of a claimant's argument amounts to a waiver of her right to do so). Thus, on remand, in formulating the RFC, the ALJ must consider the evidence of Plaintiff's need to nap.

Next, Plaintiff argues that the ALJ erred in failing to properly account for her moderately restricted concentration, persistence, or pace in the RFC assessment. The State agency psychological consultants K. Lovko, Ph.D. and J. Larsen, Ph.D. found that Plaintiff did not suffer from any severe mental medically determinable impairments. (Tr. 75-76, 85-86, 99-100, 112-13). The ALJ disagreed and found that Plaintiff's depression and anxiety constituted severe medically determinable impairments which caused moderate restrictions in concentration, persistence or pace. (Tr. 1127-28). Yet the ALJ declined to include moderate limitations in concentration, persistence or pace in Plaintiff's RFC and instead limited Plaintiff to semiskilled work. (Tr. 1129).

An ALJ's assessment of a claimant's RFC is the determination of the maximum exertional and non-exertional work-related effort that a claimant can sustain despite the restrictions that her impairments produce. SSR 96-8p. An ALJ must include in his assessment of a claimant's RFC all functional restrictions that the evidence supports. *Id*. The Seventh Circuit has held that an ALJ commits reversible error when she determines that a claimant suffers moderate restrictions in concentration, persistence, or pace but does not include these restrictions in her assessment of the claimant's RFC. *O'Conner-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir.2010), citing SSR 85-15.

As noted, at the psychological consultative examination performed in September 2014, Plaintiff could not perform serial 7s and could not identify the number of weeks in a year or the direction from which the sun rose. (Tr. 486). Treating psychiatrist Dr. Robbins noted that Plaintiff became tearful (Tr. 891), demonstrated partial insight (Tr. 1042), admitted that she felt as if she

12

was on the verge of a panic attack (Tr. 1378), manifested psychomotor slowing, and admitted to auditory hallucinations (Tr. 1382).

Given the evidence in this case regarding Plaintiff's mental impairments, the ALJ failed to explain how Plaintiff could maintain concentration, persistence or pace to perform semiskilled work. The ALJ cited no evidence that established that Plaintiff could perform semiskilled work on a full-time basis. Thus, as instructed by *O'Connor-Spinner*, the ALJ should have included moderate limitations in concentration, persistence or pace in both Plaintiff's RFC and in the hypothetical question that she presented to the VE. Thus, remand is required on this point.

Next, Plaintiff argues that the ALJ failed to follow the law of the case in her evaluation of the opinion of Dr. Ralph Richter, M.D., Plaintiff's treating hand specialist. As noted, Plaintiff's case was on remand from the Appeals Council pursuant to a remand from this Court. In reversing the ALJ's decision and remanding the matter due to the weight that the ALJ accorded to treating physician Dr. Richter, the Court instructed the ALJ to identify what recent evidence demonstrated that Plaintiff could handle/finger more than occasionally and to weigh the opinion pursuant to the 404.1527(c) factors. (Tr. 1229-30). Plaintiff argues that the ALJ violated the law of the case doctrine by failing to comply with the Court's remand order.

An administrative agency is bound on remand to apply the legal principles laid down by the reviewing court. *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 145 (1940). In a Social Security case, the Supreme Court held that "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

Here, the Court held that the ALJ erred in failing to consider Dr. Richter's specialization as a hand surgeon. (Tr. 1230). Plaintiff now argues that the ALJ ignored the Court's order and did not

13

discuss the treatment that, as a specialist, Dr. Richter provided prior to opining that Plaintiff could handle/finger no more than occasionally. (Tr. 1133-34).

In its prior Order, the Court also criticized the ALJ for affording greater weight to the non-examining state agency consultants' opinions than to treating physician Dr. Richter's opinion, an error that the ALJ has repeated. (Tr. 1230). Thus, remand is necessary yet again so that Dr. Richter's opinion can be properly evaluated as required by the regulations governing treating physician opinions. *McKinzey*, 641 F.3d 891 (If the record contains an opinion from a treating specialist, the ALJ likely errs in giving greater weight to non-specialist, non-examining opinions of State agency physicians).

As for the Court's directive to the ALJ to identify evidence that demonstrated that Plaintiff retained greater manipulative abilities than Dr. Richter opined, none of the evidence that the ALJ cited established that Plaintiff retained greater manipulative abilities. The ALJ found that treatment was conservative, and that Plaintiff treated pain with lidocaine cream. (Tr. 1134). The ALJ failed to identify the significance of this observation. The ALJ cited no evidence that conservative treatment and use of lidocaine cream established that a claimant could handle/finger frequently, as the ALJ found. The ALJ failed to construct a logical/accurate bridge from this evidence to her conclusion that Plaintiff must have been able to handle/finger on more than an occasional basis. *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (ALJ must construct logical and accurate bridge from evidence to conclusion).

Similarly, the ALJ found that Dr. Richter noted that Plaintiff's reports of pain were "vague." (Tr. 1134). Again, the ALJ did not identify the significance of this statement. To the extent that the ALJ believed that Plaintiff needed to better pinpoint or to describe her pain in order for Dr. Richter to have found occasional manipulative limitations, this finding constituted an independent

14

medical conclusion. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). The ALJ also relied on Plaintiff's ability to care for herself and her father as evidence that contradicted Dr. Richter's opinion. (Tr. 1134). However, the ALJ cited no evidence that established the frequency with which Plaintiff performed self-care or cared for her father. The time that Plaintiff dedicated for self-care or for care for her father may have taken up less than one-third of the workday. To the extent that the ALJ believed that Plaintiff performed self-care/care for her father on a more than occasional basis, this finding constituted impermissible speculation. SSR 86-8 (ALJ not permitted to substitute "presumptions, speculations and suppositions" for evidence). *Accord White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence"). Thus, remand is warranted on all of the above issues related to Dr. Richter's opinions.

Next, Plaintiff argues that the ALJ erred in her evaluation of her symptoms. The ALJ relied almost entirely on Plaintiff's activities of daily living as evidence that was inconsistent with Plaintiff's subjective allegations that pertained to the use of her hands. The ALJ found that Plaintiff's ability to feed and wash an elderly parent's hair, to care for children, to prepare meals, to perform household chores, to go to a casino, and to go to a gym was inconsistent with her allegations of an inability to use her hands. (Tr. 1133). However, when Plaintiff performed daily activities, she was able to do so on her own schedule, with frequent breaks, with assistance from others, and without having to meet employer standards. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). The ALJ did not explain if or how she considered that Plaintiff was afforded nearly unlimited flexibility in performing these activities.

In a function report from March 2015, Plaintiff described difficulties dressing, bathing, and caring for her hair. (Tr. 309). She stated that it takes longer for her to cook due to fatigue and that

15

she needs help to complete housework. (Tr. 310). She noted that her daughter helps her cook, clean, grocery shop and run errands. (Tr. 315). During the second hearing held in March 2020, Plaintiff testified that her children had to open objects for her due to the constant shaking of her hands and numbness in her fingertips. (Tr. 1152). It was painful for her to even open medication bottles. (Tr. 1157). She explained that she had difficulty styling her hair since the right carpal tunnel release. (Tr. 1155).

Clearly, the ALJ never considered the limitations Plaintiff experienced while performing activities of daily living. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("an ALJ cannot disregard a claimant's limitations in performing household activities"); *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) ("The ALJ ignored Craft's qualifications as to he carried out those activities . . . . Each activity left him exhausted."). The ALJ did not determine the frequency with which Plaintiff performed any of these daily activities or for how long she performed them. The ALJ was responsible for determining if Plaintiff could perform work tasks on a full-time basis and not if she could sporadically perform basic daily activities. *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004).

Moreover, the ALJ was not permitted to find that Plaintiff exaggerated her subjective allegations based on her ability to care for family members, for a claimant may care for family members out of necessity despite suffering disabling pain/symptoms. *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) (The ALJ erred in equating the ability to care for a family member with the challenges of daily employment in a competitive environment); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) (Claimant "must take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts."). Here, the ALJ did not determine if Plaintiff was the only individual who could provide care for her elderly parent

or if she cared for him out of necessity. In fact, Plaintiff testified that a home health aide came to her house to help her father dress and bathe himself. (Tr. 1164).

The ALJ referred to Plaintiff going to the gym once and to the casino on two occasions to undermine the severity of her hand limitations. (Tr. 1133). Plaintiff argues that the ALJ relied on an impermissible selective recitation of evidence to support a finding of disability, pointing out that the ALJ scoured a nearly 2100-page record for three references that purportedly indicated that Plaintiff exaggerated limitations in use of her hands. Furthermore, the ALJ cited no evidence that suggested that Plaintiff used her hands while at the gym or the casino in a manner that was inconsistent with Plaintiff's testimony. The ALJ impermissibly relied on speculation in violation of SSR 86-8.

The ALJ, at times, vaguely referenced Plaintiff's receipt of conservative/routine treatment to discredit her subjective allegations. (Tr. 1131, 1133). Plaintiff contends that the ALJ mischaracterized her treatment history. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (remanding where the ALJ failed to discuss significant evidence and ignored evidence contrary to his decision). Plaintiff underwent at least two knee arthroscopies, carpal tunnel release surgery, and injections, and was prescribed medication that included both opioid pain relievers and strong psychotropics. (Tr. 378, 382, 523, 894-96, 990-1116, 2011). This treatment was neither routine nor conservative. Even assuming, arguendo, that Plaintiff's treatment was routine/conservative, an ALJ may not rely on a claimant's receipt of routine/conservative treatment as evidence that was inconsistent with her subjective allegations without first identifying what aggressive treatment was available/ appropriate with citations to contrary authority. *Martinez v. Astrue*, 2:10-CV-370-PRC, 2011 WL 4834252, at *8 (N.D. Ind. Oct. 11, 2011).

The Commissioner maintains that the ALJ properly considered Plaintiff's subjective

17

allegations and argues that an ALJ's evaluation of subjective symptoms should be upheld unless it is "patently wrong". *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). However, here, the ALJ's assessment of Plaintiff's subjective allegations was patently wrong, for it relied on inferences that were not logically based on specific findings or evidence. Thus, remand is warranted for a re-evaluation of Plaintiff's subjective symptoms.

Next, Plaintiff argues that the appointment of Andrew Saul[2] as the Commissioner of the Social Security Administation violates separation of powers, and entitles her to a remand. The United States Supreme Court has held that it is unconstitutional for an executive agency to be led by a single head who serves for a longer term than the President and can only be removed from his position for cause. *Seila Law LLC v. CFPB*, 140 S.Ct. 2183 (Jun. 20, 2020). Plaintiff argues that the constitutionally invalid structure of the CFPB is identical to that of the Social Security Administration because the Commissioner of the Administration is the singular head of the Agency, serves for six years, and cannot be removed by the President except for cause ("neglect of duty or malfeasance in office"). 42 U.S.C. § 902(a)(3). As the Supreme Court specifically held in *Seila Law*, the "insulation from removal by an accountable President is enough to render the agency's structure unconstitutional." *Seila Law*, at *15. Thus, Plaintiff argues that she was deprived of a valid administrative adjudicatory process, requiring remand.

The Commissioner agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. However, the Commissioner contends that a variety of other legal doctrines - harmless

---

[2] Andrew Saul was the Commissioner of the Social Security Administration at the time Plaintiff first filed her applications for benefits.

error, de facto officer, and the rule of necessity, as well a broad prudential considerations- provide that Plaintiff is not entitled to remand simply because 42. U.S.C. § 902(a)(3) violates the separation of powers.

As remand is appropriate in this case due to errors by the ALJ, this court will invoke the principal of constitutional avoidance, and decline to address the constitutional issue. *United States v. Orona-Ibarra*, 831 F.3d 867, 876 (7th Cir. 2016); *Taffy v. Comm'r of Soc. Sec.*, No. C-21-5146, 2021 WL 4988717, at *6 (W.D. Wash. Oct. 27, 2021).

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: December 20, 2021.

                                                 s/ William C. Lee
                                                 William C. Lee, Judge
                                                 United States District Court